UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REINER QUIALA ACANDA (A# 233-778-553),

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY,

Respondent.

No.  1:26-cv-04114 TLN SCR

ORDER AND

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

I.      Factual and Procedural History

Petitioner is a native and citizen of Cuba who entered the United States on February 29, 2024, through the Cuban, Haitian, Nicaraguan, and Venezuelan ("CHNV") parole program.[1] Petitioner was granted parole for a period of two years, through February 27, 2026.  ECF No. 9-1

---

[1]  The CHNV parole program created a process under which noncitizens, along with a U.S.-based supporter, could apply in advance to travel to a U.S. port of entry and be considered for a case-by-case determination of temporary, humanitarian parole under 8 U.S.C. § 1182(d)(5) for a period of up to two years.  Coal. for Humane Immigrant Rts. v. Noem, 805 F. Supp. 3d 48, 65 (D.D.C. 2025); see also Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266 (Jan. 9, 2023).

1

at 2.

The Department of Homeland Security ("DHS") terminated the CHNV program on March 25, 2025.  See Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611-01 (Mar. 25, 2025).  DHS's regulatory notice provided that individuals, like Petitioner, who received parole through the CHNV program between October 19, 2022, and January 22, 2025, and whose parole had not yet naturally expired, would have their parole revoked within 30 days.  Id. at 13618-19.  Petitioner's individual parole was terminated on April 24, 2025.  ECF No. 9-1 at 2.

On August 26, 2025, the Hillsborough County (FL) Sheriff's Department arrested Petitioner for domestic battery, Fla. Stat. § 784.03(1)(a)(1).  ECF No. 9-3 at 5.  On April 23, 2026, the Sumner County (FL) Sheriff's Office arrested Petitioner on an out-of-county warrant for failure to obey written promise to appear, Fla. Stat. § 901.31.  Id. at 5-6.  On May 16, 2026, Petitioner was transferred from Sumner County Jail to Immigration and Customs Enforcement's ("ICE") Orlando office.  ECF No. 9-1 at 3.  ICE issued Petitioner a Notice to Appear ("NTA") administratively charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i) (noncitizen present without valid entry document).  Petitioner is currently detained at the Golden State Annex Immigration Detention Facility, within this judicial district.  ECF No. 1 at 2.

Petitioner filed the instant § 2241 petition on May 29, 2026, challenging his "ongoing, prolonged" detention under the Due Process Clause of the Fifth Amendment.  ECF No. 1 at 16-17.  He alleges that ICE arrested him without warrant, pre-deprivation hearing, or compliance with its own rules and regulations.  Id. at 5-6.  By way of relief, he seeks immediate release or, in the alternative, a bond hearing before an immigration judge ("IJ") in which the government must establish, by clear and convincing evidence, that Petitioner is a danger or flight risk.  Id. at 17.  Respondent counters that Petitioner is subject to mandatory detention under § 1225(b) and, as an "applicant for admission," lacks a protected liberty interest apart from the statute.  ECF No. 9.

**II.    Legal Standard**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has

2

concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v Elderidge, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**III.    Analysis**

Although the petition challenges Petitioner's "prolonged" detention, the undersigned liberally construes it as a due process challenge to his re-detention without notice or opportunity to be heard. See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (courts must undersigned must "construe habeas petitions liberally"). The undersigned will not penalize Petitioner, a detained, pro se litigant, for using a form that does not fully reflect the technical circumstances of his detention. See Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013) (a court must not hold "missing or inaccurate legal terminology" against incarcerated, pro se litigants). Accordingly, the undersigned will proceed to the procedural due process analysis.

### A. Protected Liberty Interest

As a humanitarian parolee, Petitioner does appear to be subject to 8 U.S.C. § 1225(b).  See Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (noting that applicants for admission may be released on humanitarian parole "regardless" of whether § 1225(b)(1) or (b)(2) authorizes their detention) (citing 8 U.S.C. § 1182(d)(5)(A)).  However, regardless of the statutory authority for his detention, the undersigned finds that Petitioner has a protected liberty interest in his continued freedom from detention.  See Cajina v. Wofford, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) ("The court . . . need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme.").

Petitioner's release on parole "created an 'implicit promise' that [his] liberty would not be revoked if [he] complied with the conditions of [his] release." Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1175 (E.D. Cal. 2025) (citing Morrissey, 408 U.S. at 482). Even though DHS revoked Petitioner's parole in May 2025 pursuant to its regulatory notice terminating the CHNV program, and Petitioner's parole would have naturally expired in February 2026, the undersigned nevertheless concludes that "Petitioner's liberty interest does not evaporate when a term of parole expires." Juan Carlos V.B. v. Chestnut, No. 1:26-CV-03077 TLN SCR, 2026 WL 1224238, at *2 (E.D. Cal. May 5, 2026)"); see also D.L.C. v. Wofford, 820 F. Supp. 3d 1106, 1111 (E.D. Cal. 2026) (same).  "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-detaining the parolee." Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); see also L.M. v. Noem, No. 2:25-cv-02194-RFB-BNW, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (same in context of termination of CHNV parole program).

The undersigned has repeatedly rejected Respondent's argument, based on DHS v.

Thuraissigiam, 591 U.S. 103 (2020), that noncitizens cannot invoke the Due Process Clause to seek protections against unjustified detention that extend beyond what Congress provided in § 1225(b).  See, e.g., Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *4 (E.D. Cal. Jan. 13, 2026), report and recommendation adopted, No. 1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026).  Thurassigiam is distinguishable in that its "discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question."  Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023); see also Sadeqi v. LaRose, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (interpreting Thuraissigiam as "circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*.") (emphasis in original).  Moreover, Thuraissigiam concerned an individual arrested mere yards from the border a short time after entering without inspection, and whom DHS had never released into the United States, not a parolee like Petitioner who has established meaningful ties to the United States.

Having found Petitioner has a protected liberty interest in his continued release, the undersigned will turn to the Mathews factors.

### B.  Mathews Factors

Turning to the first Mathews factor, Petitioner has a substantial private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690.  ECF No. 9-1 at 4.  Although the petition does not offer much factual content, Petitioner's immigration records reflect that he has two minor children, including one who was born after his parole into the United States.  Thus, there is some evidence that Petitioner has relied on his parole to form the "enduring attachments of normal life."  See Morrissey, 408 U.S. at 482.  Accordingly, the first factor favors Petitioner.

Second, the undersigned finds that there is a risk of erroneous deprivation of liberty given that Respondent does not refute that Petitioner received neither notice nor a hearing before a neutral arbiter to determine whether he constitutes a danger or flight risk.  See Guillermo M. R. v.

Kaiser, 791 F.Supp.3d 1021, 1035 (N.D. Cal. July 17, 2025) ("[A]llowing a neutral arbiter to review [these] facts would significantly reduce the risk of erroneous deprivation."). Petitioner's most recent arrest for failure to appear may affect the degree of this risk, as a noncitizen's court appearance record is an element in the flight risk analysis applied by the immigration court system. See Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006). But while Petitioner's arrest may constitute materially changed circumstances "that would warrant detention … due process requires that assertion be tested at a hearing that meets constitutional requirements." Ortega v. Noem, No. 1:25-cv-01663-DJC-CKD, 2025 WL 3511914, at *2 (E.D. Cal. Dec. 8, 2025). Therefore, the second factor still tilts toward Petitioner.

The third factor in the Court's analysis is the government's interest, including any fiscal or administrative burden that would result from additional process. Although the government has a strong interest in enforcing immigration regulations, the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

Accordingly, the undersigned finds that, on balance, the Mathews factors show that Petitioner's arrest and detention without notice or opportunity to be heard violated due process. The remedy for such a violation is typically a pre-deprivation hearing. See R.D.T.M. v. Wofford, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *5 (E.D. Cal. Sept. 9, 2025) (collecting cases); Zinermon v. Burch, 494 U.S. 113, 127 (1990) (The Due Process Clause typically "requires some kind of a hearing before the State deprives a person of liberty."). The assigned District Judge has identified post-deprivation remedies as a "special case" and appropriate only with the presence of mitigating circumstances (e.g., final order of removal, criminal history, or individualized changed circumstances to justify re-detention). Charan S. v. Warden of the California City Det. Facility, No. 1:26-CV-03017-TLN-JDP, 2026 WL 1144158, at *7 (E.D. Cal. Apr. 28, 2026) (citing Zinermon, 494 U.S. at 129). As noted above, Petitioner's

6

most recent arrest—apparently for failing to appear—may be relevant to the ultimate flight risk analysis at a detention hearing.  However, Respondent has not made any argument that Petitioner poses a risk of flight.  Nor has Respondent addressed the impact that Petitioner's apparent arrest for failing to appear should have on his request for relief.  As in a similar case where ICE arrested an individual after a "failure to appear on charges of driving without a license" and the respondent failed to argue that the petitioner was "a flight risk[,]" here "there is no evidence, nor has respondent presented any argument, suggesting that there was 'the necessity of quick action' by ICE such that petitioner could not have been provided a pre-deprivation hearing after being released from local custody." Hidalgo v. Warden, No. 1:26-cv-3511-DC-JDP, 2026 WL 1707795, *1 (E.D. Cal. June 12, 2026) (citations omitted).  Accordingly, the undersigned recommends that the petition be granted and Respondent be ordered to immediately release Petitioner.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion to appoint counsel (ECF No. 3) is DENIED as moot.

In addition, IT IS HEREBY RECOMMENDED that:

1.      Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted as follows:

        a.  Respondent must IMMEDIATELY RELEASE Petitioner Reiner Quiala Acanda (A# 233-778-553) from custody under the same conditions he was released prior to his current detention.  Respondent shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of release, Respondent must provide a copy of this Order to Petitioner and return all of Petitioner's documents and possessions.

        b.  Respondent be ordered to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.

c.  Respondent be ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including seven days of notice and a pre-deprivation hearing before a neutral fact-finder where: (i) Respondent show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (ii) Respondent demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention.  Zadvydas, 533 U.S. at 690; Hernandez v. Sessions, 872 F.3d 976, 990 (2017).  At any such hearing, Petitioner shall be allowed to have counsel present.

2.  The Clerk is directed to serve the California City Corrections Center with a copy of this Order.

3.  The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

4.  Any order adopting these finding and recommendation include language that it does not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal

8

the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 16, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

9